UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------X
                                  :

BMR & ASSOCIATES, LLP and
BMR ADVISORS,
                                  :

                 Plaintiffs,     :        14-cv-0865 (NSR)
   -against-                   :       OPINION AND ORDER

                                  :

SFW CAPITAL PARTNERS, LLC,
                                  :

                 Defendant.     :
-----------------------------------------------------------X

NELSON S. ROMÁN, United States District Judge:

       BMR & Associates, LLP, and BMR Advisors (collectively, "BMR" or "Plaintiffs"),

initiated this action against SFW Capital Partners, LLC ("SFW" or "Defendant") for various

breach of contract and other related claims based on SFW's alleged non-payment for work

undertaken by BMR relating to a potential investment by SFW in a group of Indian companies.

Before the Court is Defendant's motion to dismiss the First Amended Complaint. For the reasons

that follow, Defendant's motion is GRANTED, with conditions.

## I.    BACKGROUND

       The following facts are taken from Plaintiff's First Amended Complaint except where

noted and are accepted as true for the purposes of this motion.

       Plaintiffs BMR & Associates, LLP, and BMR Advisors are professional services firms

based in India. BMR offers services to facilitate strategic investments, with a focus in the tax and

regulatory domains. (Pl.'s First Am. Compl. [hereinafter, "FAC"], ECF No. 17, at ¶ 9.) BMR &

Associates and BMR Advisors are affiliated firms providing complementary services; they share

common facilities and common "BMR" branding. In executing engagements for clients, the

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/10/2015

1

firms may draw upon resources from each other. (FAC ¶ 10.) Defendant SFW is a specialized mid-market private equity fund focused on analytical tools and related service companies.

From August 2012 to February 2013, SFW engaged BMR in connection with a potential investment ("the Transaction") in a group of companies ("the Target"). (*Id*. ¶ 3.) The Target was a leading provider of analytics services headquartered in India with a complex structure—a multinational enterprise with four entities in its corporate structure, two delivery centers in India, and sales offices in the United States, the United Kingdom, Asia, and the Middle East. To facilitate SFW's investment in the Target, a proposal was made to restructure the Target. BMR was engaged to facilitate such a transaction. (*Id*. ¶¶ 3-9.) Throughout the engagement, BMR provided advice and assistance in identifying and analyzing structure options for implementing the Transaction, discussed these options with other Indian and U.S. advisors engaged by SFW and the Target, undertook a due diligence review of the Target's operations, provided valuation inputs, reviewed transaction documents, and provided project management and implementation support. The negotiations between SFW and the Target ultimately fell apart and the deal was not consummated. (*Id*. ¶ 14.)

In total, BMR alleges that Plaintiffs provided SFW with over 1,800 hours and $400,000 worth of services, all rendered either pursuant to a written contract or at the direction of SFW. (*Id*. ¶ 2.) To date, SFW has not paid BMR for this work. The work that BMR conducted for SFW appears to fall into three different categories, which are described here in further detail.

### a. Initial Review Work and the Email Agreement

In early August 2012, SFW requested that BMR review various structure options for the Transaction that had been prepared by Ernst & Young at the behest of SFW and the Target (the "Initial Review Work"). The Initial Review Work's scope is set out in an August 3, 2012 email

from Vishal Agarwal of BMR to Paresh Vaish of SFW (the "Email Agreement"). The Email Agreement contemplated a 7-10 day engagement at an initial rate of $150 per hour, with total estimated fees falling between $6,000 and $7,500. (FAC ¶ 52.) Payment of fees was not contingent upon success of the Transaction. (*Id*. ¶ 53.) On August 4, 2012, SFW agreed to the Email Agreement's terms. (*Id*. ¶ 57.)

### b.  Due Diligence Work and the August 30 Agreement

SFW also engaged BMR to perform a "financial and tax due diligence" of the Target's financial statements (the "Due Diligence Work"). (FAC ¶ 83.) The scope of work, timeline, fees, and other details for the Due Diligence Work are set out in a letter from Sanjay Mehta of BMR to Paresh Vaish of SFW dated August 30, 2012 and emailed to SFW on August 31, 2012 (the "August 30 Agreement"); SFW accepted the terms of the contract on August 31, 2014. (*Id*. at ¶¶ 84-86.) Nothing in the August 30 Agreement suggests that payment of fees would be contingent upon the Transaction's successful consummation.

The August 30 Agreement also contained a document labeled Appendix B, which sets out BMR's "Standard Terms of Business." (*See* Decl. of Michael C. Rakower [hereinafter, Rakower Decl.] Ex. 2 at 8-13; Decl. of Paresh Vaish [hereinafter, Vaish Decl.] Ex. C at 8-13; FAC ¶ 89.) This document contains a provision setting the governing law and forum for disputes. Under this provision, the terms of business are to be governed by Indian law and any disputes arising out of the engagement or terms of business are subject to the exclusive jurisdiction of the Indian courts. (*See* Rakower Decl. Ex. 2 at 13; Vaish Decl. Ex. C at 13.)

### c.  Tax Structuring and Deal Implementation Work

BMR performed a third body of work related to tax restructuring advising and deal implementation support. Throughout the time that it was engaged in this body of work, BMR

3

was involved in telephone discussions and email exchanges with the Target's personal and other advisors on the Transaction. Plaintiffs also provided SFW with regular update calls, including near daily update calls at the height of negotiations between SFW and the Target. (FAC ¶¶ 70, 72.)  In addition, BMR undertook a review of the "workings associated with computing the value of the Target under a business transfer agreement." (*Id*. ¶¶ 77-78.)

BMR asserts that this third body of work was not done pursuant to a contract, but that is disputed by SFW and this dispute is relevant to the analysis of whether the forum selection clause contained in Appendix B of the August 30 Agreement applies to the claims regarding payment for this body of work.

### d.  Procedural History

BMR filed the instant action against SFW on February 10, 2014, and filed an amended complaint on June 16, 2014. (*See* ECF Nos. 1, 17.) Plaintiffs allege ten causes of action in their First Amended Complaint: breach of contract, account stated, quantum meruit, and unjust enrichment claims as to the due diligence contract and related work; an account stated claim as to the initial review, tax structuring and deal implementation work; quantum meruit and unjust enrichment claims as to the initial review, tax structuring, deal implementation and limited review work; a breach of contract claim as to the initial review work; and two fraudulent inducement claims as to the due diligence and other work conducted by Plaintiffs on behalf of SFW. SFW moved to dismiss the First Amended Complaint on August 19. (*See* ECF No. 21.)

## II.    FORUM SELECTION CLAUSE

Defendants first move for dismissal of this action based on a forum selection clause contained within the August 30 Agreement.

### a. Legal Standard

In determining whether an action should be dismissed based on a forum selection clause, the Court employs a four-part analysis, asking: "(1) whether the clause was reasonably communicated to the party resisting enforcement; (2) whether the clause is mandatory or permissive . . . and (3) whether the claims and parties involved in the suit are subject to the forum selection clause." *Martinez v. Bloomberg LP*, 740 F.3d 211, 217 (2d Cir. 2014) (internal quotation marks omitted). "If the forum clause was communicated to the resisting party, has mandatory force, and covers the claims and parties involved in the dispute, it is presumptively enforceable." *Id.* at 216; *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 386 (2d Cir. 2007). A party can overcome the presumption of enforceability only by (4) "making a sufficiently strong showing that enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching." *Martinez*, 740 F.3d at 217; *Phillips*, 494 F.3d at 383-84.

The "burden [is] on the plaintiff, who brought suit in a forum other than the one designated by the forum selection clause, to make a strong showing in order to overcome the presumption of enforceability." *New Moon Shipping Co., Ltd. v. MAN B&W Diesel AG*, 121 F.3d 24, 29 (2d Cir. 1997) (internal quotation marks omitted). The Supreme Court has narrowly construed what kind of showing can overcome the presumption; forum selection and choice of law clauses are unreasonable (1) "if their incorporation into the agreement was the result of fraud or overreaching;" (2) "if the complaining party 'will for all practical purposes be deprived of his day in court' due to the grave inconvenience or unfairness of the selected forum;" (3) "if the fundamental unfairness of the chosen law may deprive the plaintiff of a remedy;" or (4) "if the clauses contravene a strong public policy of the forum state." *Roby v. Corporation of Lloyd's*, 996 F.2d 1353, 1363 (2d Cir. 1993) (citing *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 12-

13, 15, 18 (1972); *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 595 (1991)); *see also Phillips*, 494 F.3d at 392.

In evaluating a motion to dismiss based on a forum selection clause, the district court typically relies on the pleadings and affidavits submitted by the parties. *See Martinez*, 740 F.3d at 216.

### b.  Analysis

The August 30 Agreement consists of an Engagement Letter describing the services to be performed and engagement fees, a document labeled Appendix A providing detailed information regarding the due diligence procedures to be performed, and a document labeled Appendix B containing SFW's "Standard Terms of Business." (*See* Rakower Decl. Ex. 2.; Vaish Decl. Ex. C.) Section 15 of the Standard Terms of Business, under the heading of "Governing Law and Jurisdiction," contains a choice of law provision and a forum selection clause. It provides: "These terms of business shall be governed by and construed in accordance with the laws of India and any dispute arising out of this engagement or these terms shall be subject to the exclusive jurisdiction of the Indian courts." (Rakower Decl. Ex. 2 at 13; Vaish Decl. Ex. C at 13.)

BMR argues that this forum selection clause only applies to claims related to the Due Diligence Work and that, regardless, enforcement of the forum selection clause would be unreasonable, even as it relates to the Due Diligence Work. SFW, on the other hand, avers that the forum selection clause, based on the plain language of the contract, applies to all of BMR's claims. Analyzing each prong of the test enumerated by the Supreme Court in *M/S Bremen*, it is clear that the forum selection clause applies to all of Plaintiffs' claims related to not just the Due

Diligence Work, but also the Tax Structuring and Deal Implementation Work; it is also clear that the forum selection clause requires that BMR's claims be litigated in India.

First, there can be no question that the forum selection clause was "reasonably communicated to the party resisting enforcement" because the Plaintiffs, the parties resisting enforcement, actually drafted the Agreement and included the forum selection clause. The forum selection clause was also included in a document designated as BMR's "Standard Terms of Business." There can be no doubts as to whether Plaintiffs knew about the clause's existence.

Second, the forum selection clause contained in Section 15 of the Standard Terms of Business in the Agreement is mandatory, not permissive. The Agreement provides that "any dispute arising out of this engagement or these terms *shall* be subject to the *exclusive* jurisdiction of the Indian courts." (Rakower Decl. Ex. 2, at 13; Vaish Decl. Ex. C at 13 (emphasis added).) This is clear mandatory language. *Accord S.K.I. Beer Corp. v. Baltika Brewery*, 612 F.3d 705, 708 (2d Cir. 2010) ("A forum selection clause is viewed as mandatory when it confers exclusive jurisdiction on the designated forum or incorporates obligatory venue language.") (quoting *Phillips*, 494 F.3d at 386).

Third, the forum selection clause applies to all parties involved in this action and applies to, at least, the claims related to the Due Diligence Work and the Tax Structuring and Deal Implementation Work.

The claims related to the Due Diligence Work are clearly subject to the forum selection clause. Count I is a straightforward claim for the breach of the very contract that contains the forum selection clause. Counts II, III, and IV, while equitable causes of action, are still based upon the contract, and "where the relationship between the parties is contractual, the pleading of alternative, non-contractual theories of liability should not prevent enforcement of such a bargain

[as to the appropriate forum].” *Cfirstclass Corp. v. Silverjet PLC*, 560 F. Supp. 2d 324, 329 (S.D.N.Y. 2008) (quoting *Hugel v. Corporation of Lloyd's*, 999 F.2d 606 (7th Cir. 1993)); *see also Anselmo v. Univision Station Group, Inc.*, No. 92 Civ. 1471, 1993 WL 17173, at *2 (S.D.N.Y. Jan. 15, 1993) (“A forum selection clause should not be defeated by artful pleading of claims not based on the contract containing the clause if those claims grow out of the contractual relationship, or if ‘the gist’ of those claims is a breach of that relationship.”). Plaintiffs even conceded as much when they initially agreed at a pre-motion conference that these claims “should be pled in India,” and were set to stipulate to dismissal of these claims. (*See* Transcript of March 26, 2014 Pre-Motion Conference, ECF No. 11, at 8.)[1]

Plaintiffs' claims covering the Tax Structuring and Deal Implementation Work, all of which occurred after the August 30 Agreement was in place, are also covered by the forum selection clause. Counts V, VI, and VII of the First Amended Complaint cover this set of work. The plain language contained in Appendix B, the “Standard Terms of Business,” makes clear the clause's applicability. Appendix B begins by stating: “The following terms of business apply to *engagements* accepted by BMR Advisors (“BMR”). *All work carried out is subject to these terms* except to the extent that changes are expressly agreed in writing.” (Rakower Decl. Ex. 2 at 8; Vaish Decl. Ex. C at 8 (emphasis added).) The clause mandating that disputes be litigated in India is contained within Section 15, “Governing Law and Jurisdiction,” of the Appendix. Another provision of Appendix B also indicates, based on a reading of its plain language, that the terms of Appendix B applied to more than just the Due Diligence Work: “Such terms [set forth in Appendix B] *shall also continue to apply* after any termination of the Engagement Letter *and during any dispute between the parties*.” (Rakower Decl. Ex. 2 at 11; Vaish Decl. Ex. C at 11

---

[1] Plaintiffs later withdrew this concession, however, and chose to move forward with the claims related to the Due Diligence Work. (*See* Transcript of May 30, 2014 Pre-Motion Conference, at 4-5.)

(emphasis added).) "[W]ords and phrases in a contact should be given their plain meaning, and the contract should be construed so as to give full meaning and effect to all of its provisions." *LaSalle Bank Nat. Ass'n v. Nomura Asset Capital Corp.*, 424 F.3d 195, 206 (2d Cir. 2005) (internal quotation marks omitted). The plain meaning of the two provisions described shows that BMR's Standard Terms of Business did not simply apply to the scope of work outlined in the August 30 letter. Appendix B utilizes "engagements," rather than the singular "engagement;" it also notes that "[a]ll work" conducted was to be subject to Appendix B's terms.[2] BMR argues that such a reading would render another clause—"To be read in conjunction with our letter dated August 30, 2012"—superfluous. But this clause does not, on its face, limit the applicability of the terms to only the scope set forth in the August 30 letter, while other provisions of the Appendix support a reading of the contract that covers all of the work BMR carried out for SFW. Thus, because the plain language of the Standard Terms of Business set forth in Appendix B shows that these terms also apply to the Tax Structuring and Deal Implementation Work conducted after the parties entered into the August 30 Agreement, the claims related to this work are also governed by the forum selection clause.

Additionally, Plaintiffs cannot get around the forum selection clause by alleging fraudulent inducement, as in Counts IX and X. "Fraud in the inducement of the Agreement, as distinct from fraud in the inducement of the forum selection clause specifically, is insufficient to defeat the forum selection clause." *J.B. Harris, Inc. v. Razei Bar Industries, Ltd*., 37 F. Supp. 2d 186, 191 (E.D.N.Y. 1998); *see also J.B. Harris, Inc. v. Razei Bar Indsutries, Ltd*., 181 F.3d 82, at *2 (2d Cir. 1999) ("[A] fraudulent inducement claim is no defense to a motion to dismiss based on a forum selection clause unless the fraud procured agreement to the clause specifically, rather than to the contract as a whole."); *Envirolite Enterprises, Inc. v. Glastechnische Industrie Peter*

---

[2] Unless changes were made in writing

*Lisec Gesellschaft M.B.H.*, 53 B.R. 1007, 1010, 1014 (S.D.N.Y. 1985) (enforcing forum selection clause to dismiss breach of contract and fraudulent inducement claims). Here, Plaintiffs have not alleged fraudulent inducement as to the forum selection clause itself, and their fraud claims arise out of the contractual relationship governed by the August 30 Agreement.

As to the question of whether all of the parties in this litigation are subject to the forum selection clause, it is clear that BMR Advisors and BMR & Associates are both subject to the clause's effect, as is SFW. BMR Advisors and SFW are bound by their direct agreement to the contract. BMR & Associates is also bound to the forum selection clause, even if, as BMR argues, the relationship with SFW were somehow non-contractual. A non-party can be bound to a forum selection clause when the party is "closely related to the dispute such that it becomes foreseeable that it will be bound." *Hugel v. Corp. of Lloyd's*, 999 F.2d 206, 209 (7th Cir. 1993); *see also Aguas Lenders Recovery Group v. Suez*, 585 F.3d 696, 701 (2d Cir. 2009) ("We find ample support for the conclusion that the fact that a party is a non-signatory to an agreement is insufficient, standing alone, to preclude enforcement of a forum selection clause.") (collecting cases); *Marano Enters. of Kansas v. Z-Teca Rests., L.P.*, 254 F.3d 753, 757-58 (8th Cir. 2001) (holding non-signatories bound by forum selection clause because non-signatories were "closely related" to signatories and acquiesced to clause by voluntarily bring suit with signatories); *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 514 n.5 (9th Cir. 1988) ("[The] alleged conduct of the non-parties is so closely related to the contractual relationship that the forum selection clause applies to all defendants."). It is clear from the pleadings that BMR & Associates is closely related to BMR Advisors and, further, BMR & Associates voluntarily chose to bring suit with BMR Advisors, which is clearly bound by the forum selection clause.

The burden now shifts to the Plaintiffs, as the resisting parties, to "make a strong showing in order to overcome the presumption of enforceability." *New Moon Shipping*, 121 F.3d at 29. BMR has not alleged that the forum selection clause's incorporation into the August 30 Agreement was the result of fraud or overreaching, that the unfairness of the chosen law will deprive BMR of a remedy, or that the clauses contravene a strong public policy. BMR argues that delays in the courts of India are such that litigating there would be so difficult as to deprive Plaintiffs of a fair opportunity to litigate their claims, because the Due Diligence Work comprises only a small portion of the total amount at stake in this matter. In support of this, they offer two newspaper articles with anecdotal evidence regarding large case backlogs in the Indian courts and a report about delays at the Indian Supreme Court. (*See* Rakower Decl. Exs. 3-5.) As discussed above, however, the clause applies to all of BMR's claims, and the burden that BMR must meet in order to overcome the presumption of enforceability is heavy. BMR has not met its burden. *Accord Glyphics Media, Inc. v. M.V. Conti Singapore*, No. 02 Civ. 4398, 2003 WL 1484145, at *4 (S.D.N.Y. Mar. 21, 2003) (finding India to be adequate forum). Mere anecdotal evidence is insufficient to constitute "a strong showing."

Thus, the breach of contract, account stated, quantum meruit, unjust enrichment, and fraudulent inducement claims related to the Due Diligence Work and the Tax Structuring and Deal Implementation Work must be dismissed because the forum selection clause in the August 30 Agreement mandates that these claims be brought in the courts of India, not the United States. Plaintiffs have not made a sufficient showing that enforcement of the forum selection clause would be unreasonable or unjust, particularly in light of the fact that they themselves are responsible for the forum selection clause's existence in the first place.

This Court does not reach the issue of whether the forum selection clause would apply to the Initial Review Work conducted pursuant to the Email Agreement, which was completed before the parties agreed to the terms of the August 30 Agreement. Regardless of whether the clause would apply, Plaintiffs cannot maintain their claims as they relate to only the Initial Review Work in this Court because the disputed amount owed for the Initial Review Work appears from the First Amended Complaint to fall somewhere below $10,000. This is not a sufficient amount-in-controversy to maintain diversity jurisdiction. *See* 28 U.S.C. § 1332. Thus, because Plaintiffs' claims related to the Due Diligence Work and the Tax Structuring and Deal Implementation Work are dismissed, the Plaintiffs' claim related to the Initial Review Work must also be dismissed.

### III.    FORUM NON CONVENIENS

Defendants also move to dismiss all claims based on the doctrine of *forum non conveniens*. Even if the dispute as to whether the forum selection clause contained in Appendix B of the August 30 Agreement were resolved in Plaintiffs' favor as to the claims related to the non-Due Diligence Work performed by BMR, Plaintiffs' claims would still be subject to dismissal on *forum non conveniens* grounds.

#### a.  Legal Standard

"The principle of forum non conveniens is simply that a court may resist imposition upon its jurisdiction even when jurisdiction is authorized by the letter of a general venue statute." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 507 (1947). The doctrine "allows a district court to dismiss a case where the preferred venue is a foreign tribunal." *Overseas Media, Inc. v. Skvortsov*, 441 F. Supp. 2d 610, 615 (S.D.N.Y. 2006). In evaluating whether an action should be dismissed under the doctrine of *forum non conveniens*, courts in the Second Circuit consider three factors: (1) the

degree of deference accorded to plaintiff's choice of forum; (2) whether the forum proposed by the defendant is adequate to adjudicate the dispute; and (3) the balance between the private and public interests affected by the chosen forum. *Norex Petroleum Ltd. v. Access Industries, Inc.*, 416 F.3d 146, 153 (2d Cir. 2005); *see also Iragorri v. United Technologies Corp.*, 274 F.3d 65 (2d Cir. 2001); *Overseas Media*, 441 F. Supp. 2d at 615.

### b. Analysis

The Court looks at each prong of the *forum non conveniens* test in turn to determine which forum would ultimately be the most convenient for litigation of this matter.

#### 1. Deference to Plaintiff's Choice of Forum

"Generally, there is a strong presumption in favor of a plaintiff's choice of forum." *In re Alcon Shareholder Litig.*, 719 F. Supp. 2d 263, 269 (S.D.N.Y. 2010). The reason that courts generally accord deference to the plaintiff's chosen forum is that "the greater the plaintiff's ties to the plaintiff's chosen forum, the more likely it is that the plaintiff would be inconvenienced by a requirement to bring the claim in a foreign jurisdiction." *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 102 (2d Cir. 2000); *see also Dattner v. Conagra Foods, Inc.*, No. 01 Civ. 11297, 2003 WL 1740448, at *2 (S.D.N.Y. Apr. 2, 2003).

The Second Circuit has instructed that the amount of deference to be given to a plaintiff's choice of forum should be evaluated on a sliding scale. "[T]he greater the plaintiff's or the lawsuit's bona fide connection to the United States and to the forum of choice and the more it appears that considerations of convenience favor the conduct of the lawsuit in the United States," the more deference should be afforded to the plaintiff's choice. *Iragorri v. United Technologies Corp.*, 274 F.3d 65, 72 (2d Cir. 2001). When the plaintiff has chosen their home forum in which to bring suit, an assumption of convenience is reasonable; "[w]hen the plaintiff is foreign,

however, this assumption is much less reasonable. Because the central purpose of any forum non

conveniens inquiry is to ensure that the trial is convenient, a foreign plaintiff's choice deserves

less deference." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 256 (1981).

This is not to say that BMR's choice to bring suit in this District should be accorded no

deference at all. There is no smoking gun here that would show that BMR was clearly attempting

to forum shop. But BMR's choice of this forum receives a lesser amount of deference because

the assumption of convenience is less reasonable due to BMR's lack of connection to this

District.

Additionally, the fact that Plaintiffs chose to bring this action in Defendant's home forum

does not weigh in Plaintiffs' favor either or serve as a good proxy for convenience. Rather, such

a choice suggests that the reasons for choosing to bring suit in this venue may have been

something other than true convenience. In any case, the choice to bring suit in Defendant's home

forum does not alone entitle Plaintiffs to heightened deference:

> Bearing in mind that litigants rarely are concerned with promoting their
> adversary's convenience at their own expense, a plaintiff's choice of the
> defendant's home forum over other fora where defendant is amenable to suit and
> to which the plaintiff and the circumstances of the case are much more closely
> connected suggests the possibility that plaintiff's choice was made for reasons of
> trial strategy. Accordingly, a plaintiff's choice to initiate suit in the defendant's
> home forum—as opposed to any other where the defendant is also amenable to
> suit—*only merits heightened deference to the extent that the plaintiff and the case
> possess bona fide connections to, and convenience factors favor, that forum.*

*Pollux Holding Ltd. v. Chase Manhattan Bank*, 329 F.3d 64, 74 (2d Cir. 2003) (emphasis added).

Plaintiffs do not appear to possess any *bona fide* connections of their own to this District, and the

instant action's only nexus is that this District may be considered Defendant's home forum and

the location of some potential witnesses and documents. Plaintiffs are not registered as foreign

entities doing business in New York, (*see* Vaish Decl. ¶ 46), nor do they have an office in New

York or any other apparent connection to New York other than their connection to some of the

parties involved in the Transaction. Because of this, the amount of deference to be given to BMR's choice of this District is minimal.

 2.  Alternative Forum

The doctrine of *forum non conveniens* "presupposes at least two forums in which the defendant is amenable to process." *Gulf Oil*, 330 U.S. at 507. Thus, in order for a Court to grant a motion to dismiss for *forum non conveniens*, there must be an alternative forum in which the action can be brought and such alternative forum must be adequate. "An alternative forum is ordinarily adequate if the defendants are amenable to service of process there and the forum permits litigation of the subject matter of the dispute." *In re Arbitration between Monegasque De Reassurances S.A.M. v. Nak Naftogaz of Ukraine* (*In re Arbitration*), 311 F.3d 488, 499 (2d Cir. 2002); *see also Piper Aircraft Co.*, 454 U.S. at 254 n.22; *Murray v. British Broadcasting Corp.*, 81 F.3d 287, 292 (2d Cir. 1996) ("The requirement of an alternative forum is ordinarily satisfied if the defendant is amenable to process in another jurisdiction, except in rare circumstances . . . ." (internal quotations omitted)).

Neither side has presented more than anecdotal evidence and citations to other cases for the issue of whether India would be an inadequate forum. The parties do not contest, however, that the courts in India "permit[] litigation of the subject matter of the dispute." *See In re Arbitration*, 311 F.3d at 499. If the forum permits such litigation and the defendants are amenable to service of process in the proposed alternative forum, courts are generally reluctant to judge a foreign forum as inadequate. *See PT United Can Co. Ltd. v. Crown Cork & Seal Co., Inc.*, 138 F.3d 65, 73 (2d Cir. 1998) (internal citations omitted) ("At this stage, considerations of comity preclude a court from adversely judging the quality of a foreign justice system absent a showing of inadequate procedural safeguards, . . . so such a finding is rare."). In *Union Carbide*,

the Second Circuit accepted the district court's finding that "the Indian courts provide a reasonably adequate alternative forum." *In re Union Carbide Corp. Gas Plan Disaster at Bhopal, India in Dec., 1984*, 809 F.2d 195, 202 (2d Cir. 1987). Other courts within this Circuit have similarly found India to be an adequate forum when the evidence presented by the plaintiff consisted only of items containing "anecdotal references to congestion in Indian courts," even in the face of case backlogs in India. *Chhawchharia v. Boeing Co.*, 657 F. Supp. 1157, 1160 (S.D.N.Y. 1987).

Because an alternative forum is inadequate only in those "rare circumstances when the remedy offered by the other forum is clearly unsatisfactory," *Murray*, 81 F.3d at 292 (internal quotation marks omitted), this Court declines to find India to be an inadequate alternative forum for this litigation. To find the Indian courts to be an inadequate forum in which to litigate a straightforward contract dispute based only on a single report[3] and two newspaper articles would have the potential to unnecessarily open the floodgates.

This Court's conclusion is further supported by the fact that *Plaintiffs themselves* chose India as the *mandatory and exclusive* forum for disputes arising out of the August 30 Agreement, by inserting a forum selection clause into the contract *that they themselves drafted*. Any perceived backlog in the Indian courts did not crop up unexpectedly in the less than three years between when BMR drafted the agreement and today so as to have been unforeseeable at the time BMR chose India's courts as an adequate forum for disputes arising out of its contractual relationship with SFW.

---

[3] The report submitted by Plaintiff also concerns itself mostly with the Indian Supreme Court, not the courts where Plaintiffs' claims would first be filed. Plaintiffs have not provided the Court with reason to believe that the particular court(s) where their claims would be brought are somehow more or less adequate than this Court's determination about the Indian courts generally.

3.   <u>Public and Private Interest Factors</u>

Step three of the *forum non conveniens* analysis requires the Court to balance the public and private interest factors "to determine whether the convenience of the parties and the ends of justice would best be served by dismissing the action." *Murray*, 81 F.3d at 293. The private factors to be considered include:

> the relative access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.

*Iragorri*, 274 F.3d 65, 73-74 (2d Cir. 2001) (quoting *Gulf Oil*, 330 U.S. at 508); *see also Murray*, 81 F.3d at 294. The public interest factors enumerated in *Gulf Oil* and summarized in *Piper Aircraft* include:

> the administrative difficulties flowing from court congestion; the local interest in having controversies decided at home; the interest in having the trial in a forum that is familiar with the law governing the action; the avoidance of unnecessary problems in conflict of laws or in the application of forum law; and the unfairness of burdening citizens in an unrelated forum with jury duty.

*Murray*, 81 F.3d at 293.

In considering the private interest factors, the court necessarily engages in "a comparison between the hardships defendant would suffer through the retention of jurisdiction and the hardships the plaintiff would suffer as the result of dismissal." *Iragorri*, 274 F.3d at 74. The private interest factors in this matter are neutral and do not weigh in favor of one forum over the other. Both parties have argued that they will require documents from the forum other than the one in which they wish to litigate; with most, if not all, of the documentary evidence in electronic form, however, this has little impact on the convenience of litigating in either country. Much the same could be said about witness availability; BMR wishes to interview and call witnesses located in the United States, and SFW avers that it plans to interview and call

witnesses who reside in India. This means that witness availability will be a concern no matter where the matter is litigated, and the arguments set forth by both sides as to why one forum is more convenient than the other render this factor neutral in the *forum non conveniens* analysis. The parties have not alleged anything that convinces the Court that litigation in one forum will be easier or less inexpensive. The only portion that could weigh slightly in favor of litigation in this District is that litigation could potentially be more expeditious here, based on Plaintiffs' representation of the case backlog in India.

The public interest factors, those "factors pertaining to the burden imposed on this forum by retention of these disputes," *Doe v. Hyland Therapeutics Div.*, 807 F. Supp. 1117, 1128 (S.D.N.Y. 1992), point sharply in favor of dismissal. First, this Court has an interest in preventing unnecessary congestion of the court's docket. Clearly this is not a factor that is dispositive in light of the allegations regarding large backlogs in India, but it should be noted that "this Court sits in one of the busiest districts in the country, . . . making this one of the congested centers of litigation referred to in [*Gulf Oil*]." *Id*. at 1128 (internal quotation marks and citations omitted); *accord Gulf Oil*, 303 U.S. at 508 ("Administrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin."). Second, the public interest weighs in favor of having local disputes decided at home. Plaintiffs are Indian entities, all of the work allegedly conducted took place in India, the Target company was in India, the meetings and discussions that BMR had involving the Transaction took place in India, and the claims require interpretation of Indian law; the only real ties to the United States are the Defendant itself and the location of some possible witnesses. Third, the choice of law provision in the August 30 Agreement mandates that the claims in this case are to be governed by Indian law, and the public interest weighs heavily in favor of having issues of foreign law decided by

18

foreign tribunals. *Accord Union Carbide*, 809 F.2d at 199 ("Indian courts would be in a superior position to construe and apply applicable Indian laws and standards than would courts of the United States."). Fourth, allowing the Indian courts to deal with application of Indian law avoids unnecessary choice of law issues. Finally, any citizens in this District who would be chosen for jury duty would be forced to decide a dispute that is clearly local to India, a country which is far removed from their own communities. *Accord Gulf Oil*, 330 U.S. at 508-09 ("Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation."). Thus, all of the public interest factors that are to be considered in a *forum non conveniens* analysis militate in favor of dismissal.

In taking a broad look at all of the private and public interests to be balanced in a *forum non conveniens* analysis, the majority of the factors weigh heavily in favor of litigation in India. Thus, the Court declines to exercise jurisdiction to hear Plaintiffs' claims regarding the work BMR conducted for SFW.

### 4.   Conditions of Dismissal

Because the *forum non conveniens* analysis presupposes that the defendant would be amenable to litigation in the alternative forum, courts have often placed conditions on the dismissal of a case on such grounds. *See, e.g., Blanco v. Banco Indus. de Venezuela, S.A.*, 997 F.2d 974, 984 (2d Cir. 1993) ("[F]orum non conveniens dismissals are often appropriately conditioned to protect the party opposing dismissal.") (collecting cases); *Union Carbide*, 809 F.2d at 203-04 (affirming dismissal on condition that defendant consent to personal jurisdiction and waive statute of limitations defense in foreign forum); *Calavo Growers of California v. Generali Belgium*, 632 F.2d 963, 968 (2d Cir. 1980) (finding that district court should have made dismissal on *forum non conveniens* grounds conditional on defendants' consent to submit to

jurisdiction in alternative forum and waiver of any statute of limitations defense that had arisen since commencement of district court action); *Schertenleib v. Traum*, 589 F.2d 1156, 1164 (2d Cir. 1978) (approving conditional dismissal); .

The instant action is dismissed on the following conditions: (1) that Defendant consents to the jurisdiction of the appropriate Indian courts; (2) that Defendant agrees to waive any statute of limitations defense that has arisen since the commencement of this action in the Southern District of New York; and (3) that the Indian courts are willing to hear the case.

## IV.    CONCLUSION

For the foregoing reasons, Defendant's motion is granted and this case is dismissed. Dismissal is conditioned on: (1) Defendant's consent to the jurisdiction of the appropriate Indian courts; (2) Defendant's agreement to waive any statute of limitations defense that has arisen since the commencement of the action in this District; and (3) the willingness of the appropriate Indian courts to hear the case. Defendant must notify Plaintiffs and this Court in writing within fifteen days of the date of this Order if it objects to these conditions. Plaintiffs will be permitted to reinstate their suit if Defendant objects or if these conditions are not otherwise met. The Clerk of the Court is respectfully directed to terminate the motion at Docket No. 21, and to terminate this case.

Dated:  March 10, 2015                                         SO ORDERED:
        White Plains, New York

                                        NELSON S. ROMÁN
                                        United States District Judge

20